W. H. SMITH v. WESTERN UNION TELEGRAPH COMPANY.

No. 8135.

1.  **Liability of Connecting Telegraph Companies.**—The analogy of connecting telegraph lines to connecting railways is so great that it is believed that the established rules of law which determine the liability of the latter may be applied to the former.

2.  **Liability of Telegraph Company.** — A telegraph company receiving a dispatch from a connecting line is bound to diligence in delivering it, for failure of which the party injured has a right of action. This is so without regard to the contract by the sender with the telegraph company which received the message touching its own liability. The company inflicting the injury is liable. Each carrier should be held liable for its own acts of negligence.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

On the 8th day of May, 1888, W. H. Smith brought suit against the Western Union Telegraph Company to recover damages for alleged negligence in failing to deliver to him a telegram announcing the dangerous illness of his father. He alleges the telegram was sent on March 2, 1888, by his brother, in his behalf and for his benefit; that it was not delivered till March 5, 1888; and that on account of failure to deliver the same he was prevented from being present during the last hours of his father's life, and by reason of its delay he did not reach his father's home till after his death. He asks damages, including the cost of the telegram, the expenses of his trip home, and mental suffering, in the sum of $5000. The defendant answered by general demurrer (which was not insisted on) and general denial, and on the trial the court instructed the jury to find a verdict for the defendant, and there was a judgment accordingly, from which this appeal is taken.

The telegram was delivered in the first instance for transmission to the agent of the Central Texas & Northwestern Railway Company, at Waxahachie, which owned a telegraph line from that city to the town of Ennis, where connection was made with the appellee's line. The agent of the first named company received the sum of 50 cents as the charges for the entire transmission and delivery of the message to the appellant at the city of Dallas. He promptly transmitted the telegram to Ennis and delivered it to the appellee, and paid appellee one-half of the charges which had been paid him. The appellee accepted the telegram at Ennis for the purpose of transmitting it to its destination, at the city of Dallas.

The witness Sharp testified on this subject, that he was, on the 2d day of March, 1888, a telegraph operator in the employ of the Central Texas & Northwestern Railway Company's telegraph at Waxahachie, Texas, and that on said day he received for transmission the following telegram:

> "WAXAHACHIE, TEXAS, March 2, 1888.
>
> "W. H. Smith, 430 Harwood Street, Dallas, Texas:
>
> "Father dangerously ill. Come at once.
>
> "WESLEY SMITH."

Said telegram was written on one of the blanks of said Central Texas & Northwestern Railway Company's telegraph, and he sent said telegram to Ennis at once, and was notified by the operator of the Western Union Telegraph Company at that place that the telegram had been received at 2:59 o'clock p. m. on the 2d day of March, 1888; that he received as toll charges for sending said telegram to Dallas the sum of 50 cents; that by an agreement between the Central Texas & Northwestern Railway Company's telegraph and the Western Union Telegraph Company the said Central Texas & Northwestern Railway Com-

pany kept only 25 cents of the amount charged for sending said telegram, and the Western Union received the remaining 25 cents; that it was the custom of the said two companies to divide all charges paid for telegrams sent from Waxahachie. The witness also stated, in substance, that in receiving the message he acted as the agent of the Central Texas & Northwestern Railway Company's telegraph, and was not the agent of the defendant, and had no authority to act for it.

It appears that the delay in transmitting and delivering the message to the appellant was due to the negligence of the appellee alone.

The telegram contained several limitations upon the liability of the initial or receiving company, but none which restricted its liability to its own line and employes. As copied in the record, the terms of the contract do not provide, as is usually done, that the first company shall only be the agent of the sender in effecting the transmission of the message beyond the termination of its own line, or in contracting with the connecting or intermediate carrier. The appellee's line extends from Ennis to Dallas, etc.

[This statement accompanied the opinion.]

*H. G. Robertson* and *W. A. Kemp*, for appellant.—The gravamen of the complaint being negligence of the defendant in failing to deliver the telegram, the proof having shown that the agent of the defendant received the telegram at Ennis, Texas, promptly at 2:59 p. m. on March 2, 1888, and the defendant negligently failed until March 5, 1888, to deliver the same, whereby the injury occurred, the appellant was entitled to recover, and the point where the message was received by the defendant and through what intermediate agency received was wholly immaterial to appellant's right to recover. Railway v. Levy, 59 Texas, 546; 9 Gray on Com. by Tel., secs. 74, 75; Shearm. & Redf. on Neg., 532, 533; 52 Ind., 1; 2 Redf. on Rys., sec. 204; 3 Suth. on Dam., p. 314.

*Stemmons & Field*, for appellee.—The court did not err in instructing the jury to find for defendant, because under the evidence plaintiff had sued the wrong company. He had no contract with appellee; and appellee's obligations were to its connecting line for any breach of the contract. De Rutte v. Tel. Co., Allen's Tel. Cases, 273; 2 Thomp. on Neg., 839, and authorities cited; Baldwin v. Tel. Co., 45 N. Y., 744; Scott & Jarn. Law of Tel., secs. 285, 287, 290.

MARR, JUDGE, *Section A.*—The court directed the jury upon the trial below to return a verdict for the defendant, upon the ground, as we are informed by the briefs of counsel, that plaintiff had failed to prove any contract for the transmission of his message with the Western Union Telegraph Company, against which he had brought his suit. In other words, the court held, that if the plaintiff had under the con-

tract any right of action, that it was against the Central Texas & Northwestern Railway Company alone, for the reason, as we presume, that the latter company had agreed, in the opinion of the court, to transmit the message to its destination, and therefore that the appellee was merely its agent employed for that purpose.

The plaintiff complains of the above charge of the court, and upon the trial below requested several special instructions, which were refused.

The analogy of connecting telegraph lines to connecting railways is so great, that it is believed that the established rules of law which determine the liability of the latter should be applied to the main question involved in this case, which relates to a connecting telegraph company. Scott & Jarn. Law of Tel., sec. 278; Gray Com. by Tel., sec. 58, and note 1.

In the case of Railway v. Baird, 75 Texas, 256, it is said, that "in the absence of a partnership or authority to make a joint contract binding upon all carriers over whose lines freight is to pass, connecting lines are but the agencies employed by the contracting carrier to perform its own contract." But according to the great weight of the authorities in the United States, the mere "marking or booking" of freight to a point beyond the line of the receiving carrier does not amount to a contract of through transportation upon its part. The same may be said of the effect of a telegram addressed to a point upon the connecting line, although there should be no express limitation as to the liability of the first company. Porter on Bills of Lading, sec. 328; Gray Com. by Tel., secs. 58, 59; Laws. Cont. of Carr., secs. 238–240; Railway v. Pratt, 22 Wall., 123.

But however this may be as affecting the liability of the initial carrier, it has been held by the courts of nearly every State in this country, including those which follow what is known as the English doctrine as to a through bill of lading, that nevertheless the connecting company will be liable if in fact it is the carrier which inflicted the injury or committed the negligence of which the plaintiff complains. Laws. on Carr., sec. 741; Baldwin v. Tel. Co., 45 N. Y., 744. This appears to be the later English doctrine, apparently upon the ground of tort. Foulton v. Railway, L. R. 5, C. P. Div., 157; 43 L. T. (N. S.), 570.

In the case of Railway v. Baird, supra, it was also held, that the connecting carrier would be "liable for any injury to the property while in its possession," etc., but was not responsible for the negligence of the other carriers. This decision is in perfect accord with the great current of authorities in this country. Porter on Bills of Lading, sec. 343, note 2. Each carrier should be held liable for its own acts of negligence, and even for the acts of the others if there is a partnership between all or a joint contract binding upon each of them. Baird's

case, supra. It has also been held by good authority, that where several railways constitute a continuous line each of them performs a public duty and an independent employment, and in accepting freight from another carrier for further transportation over its own line, contracts expressly or by legal implication, not with the other carrier but with the owner of the goods. Sherman v. Railway, 64 N. Y., 254. In any event, we think that the contract in this case which was made by the appellee, even if not made with the plaintiff, was clearly made on his behalf and for his benefit, and therefore he could elect to ratify and enforce it.

But again, whether we should regard the first company as the agent of the plaintiff or the agent of the defendant (the authorities conflicting on this point) in contracting with the appellee for the transmission of the telegram from Ennis to Dallas, it is evident that such contract is a binding agreement between the plaintiff and the defendant, for the breach of which by the latter the former may maintain his action for damages. The court, therefore, erred in directing the jury to find for the defendant.

The appellant further insists, that the court erred in refusing to instruct the jury at his request to the effect, that the defendant was bound by the written contract as its own act, because its execution had not been denied under oath by the defendant, and also because it had not denied under oath the existence of a partnership with the Chicago, Texas & Northwestern Railway Company. Rev. Stats., art. 1265, secs. 6, 8; Railway v. Tisdale, 74 Texas, 8; 61 Texas, 508. The answer to this position is, that the petition does not allege any partnership nor charge that the contract was executed by the defendant or under its authority. The Chicago, Texas & Northwestern Railway Company does not appear to be even mentioned in the petition.

It may be further remarked in reference to the issue of a partnership, had it been raised, that it should have been submitted to the jury under appropriate instructions. Baird's case, supra; Laws. on Carr., sec. 242, and notes.

In view, however, of what we have said upon the other branch of the case, we deem it unnecessary to attempt to indicate what acts would be sufficient to authorize the presumption of a partnership between the connecting companies.

Because the court erred in charging the jury to find for the defendant, we think that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted April 19, 1892.