○ Southwestern Telegraph and Telephone Company v.
R. E. Taylor.

Decided April 20, 1901.

**1.—Telephone Company—Agency—Negligence.**

Appellant telephone company operated a line between H. and W., and another company operated a line between A. and W., where both companies had a common agent. Appellant company had no agent of its own at A., but by agreement the other company's operator at A. acted for appellant in making calls and securing line connections at W. for points beyond on appellant's line, and the two companies divided the fees in such cases. Held, that the operator at A. was to be regarded as appellant's agent for making calls for line connections at W. for points beyond on appellant's line, as was H., and appellant was chargeable with the knowledge of such operator of the purport and importance of an intended verbal message (which was to have announced to plaintiff that his father was dying and wanted to see him), so that, in conjunction with the failure of the operator at W. to answer the call from A. and make the desired line connection, appellant was liable for the damages resulting to plaintiff from his failure to promptly receive such intended message.

**2.—Contributory Negligence—Fact Case.**

See facts held not to show that plaintiff was guilty of contributory negligence in failing to go as speedily to the bedside of his dying father as he might possibly have gone, it appearing that, under all the circumstances surrounding plaintiff at the time, he acted with the diligence and prudence of a reasonably prudent and diligent person.

Appeal from Clay.   Tried below before Hon. A. H. Carrigan.

*McLaurin & Wozencraft, R. Cobb,* and *George E. Miller,* for appellant. ·

*Allen & Wantland* and *H. A. Allen,* for appellee.

CONNER, CHIEF JUSTICE.—Appellee brought this suit against appellant in the District Court of Clay County to recover damages alleged to have been sustained by appellee because of mental suffering caused him by the negligent delay of appellant's servants in notifying appellee that he was wanted at appellant's telephone to receive a communication relating to the serious illness of his father.

Appellee's contention was that on account of the negligence of appellant he was deprived of the pleasure and consolation of being with, and of seeing and talking to his father, and having his father talk to him during the last ten or twelve hours of his father's consciousness, and was thereby greatly grieved and distressed in mind.

The petition in substance alleged:   That appellee resided at Henrietta, Clay County, Texas; that appellant, on June 6, 1900, owned and operated a long distance telephone line from Henrietta to Wichita Falls; that appellant's line connected at Wichita Falls with what is known as the "Carver & Wilson telephone line;" that the Carver & Wilson telephone line is a long distance telephone line running from Wichita Falls to the town of Archer; that appellant was engaged in furnishing telephone communication between Henrietta and Archer by the way of Wich-

ita Falls, over its (appellant's) said line and its said connection, and then and there so held itself out to the public to place persons while at Archer in communication with persons at Henrietta, for hire and by means of its said telephone line and its said connection. That on June 6, 1900, appellee's father, who resided at Archer, was dangerous sick, and this fact was known to appellant and its employes. That appellant kept a night office at Henrietta and Wichita Falls, and an agent at each place for night work. That on the night of June 6, 1900, and about 10 o'clock, appellee's father became worse, and T. B. Taylor, appellee's brother, went immediately to an office used and kept in connection with the said Carver & Wilson telephone line, one John Young being the agent in charge, and informed Young that appellee's father was in a dying condition and wished to see and converse with plaintiff, and then and there requested said Young to put him in communication with plaintiff at Henrietta over said defendant's line and its said connection; that Young was appellant's agent in the service requested, and as such undertook to put said T. B. Taylor in communication over said telephone lines with plaintiff, who was at Henrietta. That from 10 p. m., June 6th, until 4 a. m. on June 7th, Young tried to call up appellant's night agent at Wichita Falls, but said agent failed and refused to respond, and appellee was not reached, although he was at home in Henrietta and had in his house a telephone connecting with appellant's system. That the failure and refusal of appellant's agent at Wichita Falls to respond to said Young, and the failure of appellant, from whatever cause, to furnish the telephonic communication requested, which causes are unknown to plaintiff, constituted negligence of appellant and its said agent at Wichita Falls. That the communication did finally occur about 8 a. m., June 7, 1900, with appellee's said brother, and appellee then learned that his father was in a dying condition and was very desirous of seeing and talking with plaintiff before his death; that on same day about 1 p. m. appellee left by train for Wichita Falls, and thence by rail to Holiday, and thence by private conveyance, a buggy, to Archer, and reached his father about 6 p. m., June 7, 1900, at which time he found his father unable to converse with him.

That had any of the calls, made during the night of June 6th, over appellant's line and its said connection by said Young, been repeated and made by the said night agent of defendant at Wichita Falls, to Henrietta, plaintiff would have been quickly put in communication, over defendant's said long distance line and its said connections, with his brother, T. B. Taylor, at Archer; that he would have learned of his father's dangerous condition, and plaintiff could and would have gone immediately to the said town of Archer and to the bedside of his said father, and could and would have reached there long before his father became unconscious, and while his said father was still able to recognize plaintiff and converse with him; and could and would have reached the bedside of his father ten or twelve hours earlier than he did reach there. That plaintiff's father was conscious, and rational, able, and anxious to

see plaintiff, and to talk to and with him for about ten hours after the time plaintiff could and would have reached his said father, had defendant and its said agent at Wichita Falls not been negligent in the particulars hereinbefore charged in failing and refusing to answer to the calling of said Young, and in failing to put plaintiff's brother in communication with him. That plaintiff and his father were bound to each other by strong ties of parental and filial love, and were tenderly affectionate toward each other.

The prayer was for $1800 damages for being deprived of the consolation of seeing and conversing with his father while he was still conscious.

Appellant answered by a general and several special exceptions, a general denial, a plea of contributory negligence, and a special answer under oath denying that defendant separately on in conjunction with any other party as partner or otherwise, owned, controlled, or operated the telephone between Archer and Wichita Falls, or pretended to do so, or that defendant had any agent for any purpose at Archer in the person of John Young or anyone else, or that defendant had any agent at Wichita Falls authorized to receive calls from Archer over the Carver & Wilson line.

The trial resulted in a judgment for appellee in the sum of $1000, from which this appeal has been prosecuted.

The facts in outline are substantially as alleged in appellee's petition; the principal questions presented by the assignments of error being, first, whether the evidence supports the finding that J. T. Young, the agent of the Carver & Wilson telephone line between Archer City and Wichita Falls, was also the agent of the appellant company; and, second, whether the evidence is sufficient to sustain that finding that appellee was not guilty of contributory negligence as alleged.

As related to the rights of the parties in this suit, we have had no difficulty in the determination of the first question stated. The evidence clearly shows that the two telephone lines had a common agent or operator at Wichita Falls for all communications between Archer City and Henrietta; that it was the duty of such common agent to answer calls of the operator at Archer City for persons in Henrietta, and by means provided in the common Wichita office to connect the wires of the two lines so that a patron of the lines in Archer City could communicate over the connected wires with the desired person in Henrietta. The fees for such service were divided between the owners of the two lines, who held themselves out as able and willing to perform the office or function indicated. The appellant company had no agent other than Young at Archer City, and while it had no right to control his employment or retention, and did not contribute to his remuneration, yet he was its agent for all purposes of receiving calls at Archer City, and, through the medium of the Wichita operator, of procuring connection with persons at points on appellant's line. In other words, in appellant's business as solicited and as actually conducted the Carver & Wilson line or

company was an instrument or agent, and J. T. Young was the person and the only person at Archer City who, for appellant, performed the services indicated. The fact that in the adjustment of the mutual benefits accruing from such through business, the owners of the Carver & Wilson line procured and paid Young for his service, and that appellant had no right to discharge him, does not relieve appellant from the responsibilities flowing from its employment, acceptance and use of Young's services in the particulars named. In fact Young was guilty of no negligence. The fault was in the failure of the Wichita operator, an admited agent of the appellant, to respond to the call in answer to Young's repeated and long continued efforts to have him do so. It is in effect admitted that the common agent at Wichita Falls was negligent, and that it was by reason of such negligence on his part that appellee did not receive the call to his father's bedside for some ten or twelve hours after he should and would have received it. The question of Young's agency, therefore, becomes material only in view of the information communicated to him at the time appellee's brother made the effort to reach him. Young was then informed of the serious condition of appellee's father, and that the latter wished to see and talk with appellee, and it must therefore, we think, be held that appellant had notice, and to have had in contemplation the natural results of the negligence on the part of the agent at Wichita Falls. See Smith v. Telegraph Co., 84 Texas, 359; Railway v. St. John, 13 Texas Civ. App., 257.

The second question has been more difficult of determination, but we have finally concluded that we can not disturb the verdict and judgment in appellee's favor thereon. The facts show that there are two routes by which persons at Henrietta may go to Archer City,—one a dirt road, the other partly by rail and partly overland. The dirt road, which was fairly good, extended thirty-five miles in a southwesterly direction. The other was by rail in a northwesterly direction eighteen miles to Wichita Falls; thence by rail in a southwesterly direction thirty miles to Holiday; thence by wagon road in a southeasterly direction ten miles to Archer City. Appellee knew of his father's sickness, and had been informed by his brother over the 'phone about 8 p. m., June 6th, that his father was not doing well, and it was then arranged that if the father became worse during the night appellee should be notified, in which event appellee was to immediately start for Archer City. Appellee was prepared and could and would have gone immediately by the dirt road had he received the delayed communication during the night of June 6th, and would thereby have been enabled to reach his father in about six hours after leaving Henrietta. Appellee had a wife in delicate health, and a boy some three or four years old, that he desired to take with him, although he could have left them at home properly cared for. The days were very warm at the time, but the nights were cool. The wife was unable to endure the day ride over the wagon road, and hence, when appellee received the delayed message about 7 or 7:30 a. m., June 7th, he determined to take the rail route, and directed his brother to

have conveyance at Holiday to meet him. The first regular passenger train after any of the hours herein named was scheduled to leave Henrietta for Wichita Falls at 1:30 p. m., June 7th. Appellee, wife and child took this train, arriving at Wichita Falls about 2 p. m. The train to Holiday left about thirty minutes thereafter, and appellee arrived at the latter place at about 3:30 or 4 p. m., and thence to his father's bedside about 6 p. m. The father recognized appellee and his wife and child, but was unable to speak to them, having lost the power to converse at about 3 or 4 o'clock p. m. of that day. There was also a freight train upon which appellee could have gone as far as Wichita Falls that was scheduled to leave, and in fact did pass, Henrietta at 8:45 a. m., June 7th. Appellee knew the regular train schedules, but appears to not have known of this freight train until after it passed. Had he taken this train he could have procured livery team at Wichita Falls and driven the intervening twenty-five miles to Archer City in four hours, and in this event would have arrived at his father's bedside at 2 p. m. Appellee was himself physically and financially able to make the journey overland, and the principal reason why he did not do so was that he desired to be accompanied by his wife and child, and his wife was physically unable during the heat of the day to endure the long drive necessarily involved. We hence have the question whether, under the circumstances stated, appellee was guilty of such negligence as debars him from all right of recovery.

In the case of Telegraph Company v. Bryson, 25 Texas Civil Appeals, —, Bryson had failed, in answer to a telegram negligently delayed, announcing the serious sickness of a brother, to take a train that would have enabled him to reach the brother's bedside before the latter's death, for the reason that he, Bryson, desired to return to his home some ten miles distant from the railroad station, and there change his apparel, deliver some medicines for a sick son, and to leave directions as to the conduct of his business, all of which was unnecessary, in an absolute sense, for Bryson was able to have bought clothing in the town of the station. He could have written directions, though perhaps not very satisfactorily, for continuing his business, and sent such directions, together with said medicine, by a private messenger. This court concluded, however, that the evidence required the submission of the issue of Bryson's contributory negligence as alleged in the answer of the telegraph company. The Supreme Court refused a writ or error in the case, and we feel unable to distinguish it in principle from the case now before us. The question of negligence vel non is very generally one of fact; or at least a mixed question of law and fact, and the instances are rare, if any, in which courts have undertaken to declare as matter of law that a given act or course of conduct is or is not negligence, unless the same was contrary to some statutory duty, or so opposed to reason as that the court can say without hesitation or doubt that no reasonably prudent person would have been guilty thereof. Appellant can rest its claim for exemption from the natural and contemplated results of its

own negligence upon no written law requiring appellee to have undertaken the lonely and more fatiguing night ride from Henrietta to Archer City and leave behind him those whose comforting ministrations could best sustain him in his trying hour. If it be not unreasonable to delay, as Bryson did, to change his clothing, etc., how shall a court say that it is negligence per se for the husband to provide himself with the presence and attendance of his wife as appellee did under the circumstances of this case? At least was it not for the jury to say whether, under all of the circumstances, appellee acted with that degree of care and prudence that would have been exercised by a reasonably careful and prudent person? We think so. Appellee may not have acted as prudently or as diligently as it now seems, in the light of all the facts, he might have done, but that is not the question. Appellee at the time may not have been able to reason and act as discreetly as under some other circumstances he might have done; he then could not know that his father would become unable to speak at the time he did; he may have magnified the uncertainties, the dangers, or fatigues to himself and team of the overland journey, but his filial feeling must have prompted the best of which he was capable, and we surely should not be required to now indulge in great nicety of discrimination in aid of an admitted wrongdoer. We think this case is to be distinguished from the cases of Telegraph Company v. Birchfield, 14 Texas Civil Appeals, 664, and Telegraph Company v. Carter, 85 Texas, 580, and cases of like character. In our opinion the case of Telegraph Company v. Bryson is more nearly in point. In the Birchfield case the matter in issue was the right to recover for being deprived of a brother's company on a visit to a dying mother. In the Carter case a daughter not named in the message sought to recover because prevented from being present at her father's burial. No such issue is here involved. Appellee's wife, and his desire to have her accompany him, here appear as mere circumstances of appellee's situation at the time. All natural and probable circumstances of his situation must be held, it seems to us, to have been comprehended in the notice given Young. The real question was, did appellee, under all the circumstances surrounding him at the time, act with the diligence and prudence of a reasonably prudent and diligent person. This issue was fairly submitted to the jury, and we feel that we must decline to disturb their verdict, duly approved by the trial court.

In addition to which we add that there was evidence tending to show that had appellee started across the country at the earliest practicable moment after receiving the delayed communication, he could not have reached Archer City until about 2 or 2:30 p. m. of July 7th. There is evidence also to the effect that very soon thereafter, perhaps as early as 3 p. m. of that day, and certainly not later than 4 p. m. appellee's father became entirely unable to talk. Assuming that such inability arose suddenly and not gradually, appellee could possibly have had but a very short time, if any, during which to have heard his father's dying communications. In any event appellee must have been deprived of some

six to ten hours of time, opportunity, and privilege that was lost beyond all power of recall. Shall we say that no cause of action arises from such a deprivation? We say no. It amounted to an absolute loss of a material benefit of inestimable value, thus differing from the cases cited of mere continuance of mental anxiety for which no recovery was allowed. It is insisted that no such cause of action is presented. We feel constrained to differ with the distinguished counsel for appellant in such construction of appellee's petition. We think it distinctly presented. It is also insisted that this court held otherwise in the case of the Telegraph Company v. Stacy, 41 Southwestern Reporter, 100. We think the case mentioned will not support the contention. On the contrary this court there said: "* * * The bare fact that a husband, upon arrival at the bedside of his sick wife, may find her still conscious, and able to converse with him, without reference to the length of time during which and the ability with whch she could so converse with him, would not ordinarily be a complete defense to an action like this." While not applied in that case, we think the principle there foreshadowed applicable here, and while the trial court in his charge adopted the theory that if appellee arrived at his father's bedside at any time before he lost the power of speech appellee could not recover, we nevertheless believe the undisputed facts show that appellee in any event was entitled to recover; and on this ground also we decline to disturb the verdict and judgment.

Other questions not involving the merits have been raised, but within reasonable limits we are unable to separately meet all the propositions asserted in the very able brief and argument in behalf of appellee, and feeling unable to set aside the verdict because of excess, we therefore conclude by saying that other assignments have been carefully considered, but we find no reversible error therein. The judgment is affirmed.

*Affirmed.*

Writ of error refused.