## SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. JARRELL.

(Court of Civil Appeals of Texas. Texarkana. June 8, 1911. On Motion for Rehearing, June 29, 1911.)

1. TELEGRAPHS AND TELEPHONES (§ 66*)—DEATH MESSAGE — TELEPHONE CALL—EVIDENCE.

In an action against a telephone company for failing to deliver a long distance telephone call intended to notify plaintiff of the death of his sister, evidence *held* to warrant a finding that defendant undertook by a through call to place plaintiff in communication with the person putting in the call, and that the company had notice that the purpose of the talk between the two was to communicate to plaintiff the death of his sister.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 63; Dec. Dig. § 66.*]

2. TELEGRAPHS AND TELEPHONES (§ 56*) — LONG DISTANCE CALLS—CONTRACT—BREACH—RIGHT TO SUE.

Where H. contracted with defendant telephone company to get plaintiff on the long distance phone, in order that H. might communicate knowledge of the death of plaintiff's sister, plaintiff was entitled to sue for breach of such undertaking and to recover the damages suffered by reason of defendant's negligence.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 37; Dec. Dig. § 56.*]

3. TELEGRAPHS AND TELEPHONES (§ 73*)—LONG DISTANCE CALLS—DEATH MESSAGE—QUESTION FOR JURY.

In an action against a telephone company for failing to establish long distance connection with plaintiff, in order that H. might communicate to plaintiff the death of his sister, and the fact that she was to be buried at a specified time and place, evidence *held* to require submission to the jury of the question whether plaintiff could have reached such place in time to have attended her interment.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 76; Dec. Dig. § 73.*]

4. TELEGRAPHS AND TELEPHONES (§ 57*)—NEGLIGENCE OF CONNECTING CARRIER—LIABILITY OF INITIAL CARRIER.

Where defendant and the C. telephone company operated a continuous telephone line between two points, and defendant contracted to obtain long distance through connection between H. and plaintiff, the lines of the two companies being connected. at a cedar post at the Red river, where neither company maintained an office or agent, the fact that the failure to obtain the connection resulted from the negligence of the C. company did not relieve defendant from liability as a matter of law, under the rule that an initial carrier is not liable beyond its own line, since defendant, having selected the agency for carrying out the through contract, was liable for the negligence of such agency.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 38; Dec. Dig. § 57.*]

5. TELEGRAPHS AND TELEPHONES (§ 74*) — LONG DISTANCE CALLS—NEGLIGENCE.

Where defendant telephone company had contracted to obtain long distance telephone connection with plaintiff before a demand was made on the person putting in the call for a messenger fee, the court properly refused to charge that defendant was only liable for the exercise of ordinary care in its effort to notify plaintiff of the call from and after payment of such fee.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 77; Dec. Dig. § 74.*]

6. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTED CHARGE—INSTRUCTIONS GIVEN.

It is not error to refuse a requested charge covered by instructions given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

7. TELEGRAPHS AND TELEPHONES (§ 74*) — DEATH MESSAGE — CONTRIBUTORY NEGLIGENCE.

In an action against a telephone company for negligently failing to obtain long distance connection with plaintiff, in order that H. might notify plaintiff of the death and burial of plaintiff's sister, a requested charge that the negligence of H. in failing to advise plaintiff of the death of his sister by telegraph would constitute contributory negligence was objectionable for failure to require the jury to find that such a telegram, if sent, would have been received by plaintiff before the time of burial.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 77; Dec. Dig. § 74.*]

8. TELEGRAPHS AND TELEPHONES (§ 51*) — DEATH MESSAGE CALL — CONTRIBUTORY NEGLIGENCE.

Where H. put in a long distance call for plaintiff, in order to inform him of the death and burial of his sister, and was later erroneously informed by defendant company that plaintiff had left the place to which the call was sent, H. was thereby excused from taking further steps to notify plaintiff by telegraph.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 35; Dec. Dig. § 51.*]

9. TELEGRAPHS AND TELEPHONES (§ 51*) — DEATH CALL—CONTRIBUTORY NEGLIGENCE.

Where defendant telephone company negligently failed to execute a call for plaintiff that H. might inform plaintiff of the death and funeral of his sister, H. not being plaintiff's agent to endeavor to postpone the funeral, defendant could not claim that there was negligence of H., in failing to postpone the funeral, which was imputable to plaintiff.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 35; Dec. Dig. § 51.*]

Appeal from District Court, Cooke County; Clem B. Potter, Judge.

Action by J. B. Jarrell against the Southwestern Telegraph & Telephone Company. Judgment for plaintiff, and defendant appeals. Affirmed.

A. P. Wozencraft and W. S. Bramlett, for appellant. Potter, Culp & Culp, for appellee.

LEVY, J. Appellee sued for damages suffered in mental anguish at being deprived of attending the burial of his sister, through the alleged negligence of appellant in failing to notify him of a call from Paris, Tex. It was alleged that on December 27, 1908, John Head, for the benefit of appellee and at the request of Tom Head, went to the office of appellant at Paris, Tex., and put in a through call for appellee at Ardmore, Okl., and gave notice that the purpose was to inform appellee of the death of his sister, and when she would be buried at Paris. It is further alleged that appellant, with notice of the purpose of the call, accepted the through call and agreed and undertook to deliver the call to him at Ardmore. Trial was to a jury, and a verdict was returned in favor of appellee. All issues of fact were decided by the jury against appellant, and the evidence sustains the findings.

[1, 2] The first, third, and sixth assignments of error complain of the refusal to give a peremptory instruction, and can be here considered together for ruling. It is first insisted that a peremptory instruction should have been given, because the evidence wholly fails to establish that appellant entered into any contract, as alleged, with John Head for the benefit of appellee. The testimony shows that John Head was requested by the brother of appellee to go to the office of appellant and inform appellee at Ardmore, over the telephone, that his sister was dead, and the date of the funeral. John Head testified: "I walked to the telephone company, and told the operator that I wanted to put in a long distance call. She said, 'All right;' she took down her blank and she asked who, and I told her I wanted Mr. Barnum Jarrell at Ardmore, and that it was a death message, and then she turned around to the girl that was there, and I think at the board, and gave her the call, and asked me to be seated for a few minutes. I waited something like three-fourths of an hour, probably longer; I disremember the time. She stepped to the window and called me, and said, 'Mr. Head, it will be 25 cents messenger fee to get Mr. Jarrell.' She then asked me where she could find him, and I told her to notify the policemen; and they knew him, and that he worked for the city at the time; I believe at night. When she told me that it was 25 cents messenger fee, I told her all right, and that I would O. K. that, and I handed her 25 cents. She then turned around with the call and said she would send the messenger boy." This evidence is undenied and is sufficient to warrant the finding of the jury that appellant undertook, by a through call and delivery thereof to appellee, to put John Head and appellee in telephonic communication between Paris and Ardmore, and had notice that the purpose of the talk between the two was to communicate to appellee concerning the death of his sister. Appellee had a right to sue on the undertaking for such damages as he suffered by reason of the alleged negligence.

[3] It is next insisted that it was error to refuse the peremptory instruction, because the testimony fails to show that appellee could have reached Paris in time to attend the burial. The proof showed railroad facilities between Ardmore and Paris. The witness Head testified: "At that time there were two passenger trains daily from the north on the Frisco Railroad. One reached Paris at 9:30 a. m., and one at 3:30 p. m., each day. The train due at Paris on the Frisco at 3:30 p. m. in the afternoon was on time on the day of Mrs. Adams' funeral. I know this, because I went to the depot to meet the train." It is further shown that the burial occurred between 4 and 5 o'clock p. m., and in the cemetery in Paris. The evidence required the submission of the issue to the jury, as was done.

[4] It is next urged that a verdict should have been directed for appellant, because the evidence conclusively showed that the appellant did not own, control, manage, or operate a through telephone line between Paris and Ardmore, but that the Chickasaw Telephone Company owned, controlled, managed, and operated that part of the line between Red river and Ardmore, and because the evidence further conclusively showed that the negligence was committed by the Chickasaw Telephone Company. In this connection the evidence showed that the appellant's line runs from Paris to Gainesville and to Red river, and there stops. The line of the Chickasaw Telephone Company, a corporation, begins at Red river and runs to Ardmore. The two lines come together and are connected at Red river. This point of connection of the two lines, in the words of the witness, "is just a white cedar post, and the copper wires are tied together at the post there." There is no office or agent there. A call delivered at Paris for Ardmore goes over the line of appellant to Gainesville, and, according to the proof, is "there delivered to the Chickasaw Telephone Company for delivery at Ardmore." The Chickasaw Telephone Company by the record does not maintain an office or agent at Gainesville. By agreement or arrangement between the two companies, as shown by the evidence, calls from Paris to Ardmore and from Ardmore to Paris are received and delivered, and each company receives a specified per cent. of the toll per call. So it can be said from the facts that two separate companies under different management and ownership

have mutually agreed and arranged to carry out the original undertaking of each, and to receive and deliver the calls offered by the public to the points named. The agent of appellant at Gainesville, by the evidence, relays the call at appellant's office there from and to the points indicated. From the facts we conclude that it could not be said that appellant was relieved, as a matter of law, from the responsibility flowing from its original undertaking, as here, to deliver the call in suit to appellee at Ardmore. Telephone Co. v. Taylor, 26 Tex. Civ. App. 79, 63 S. W. 1076; Telephone Co. v. Owens, 116 S. W. 89.

The facts do not at all, we think, bring the case within the principle contended for by appellant, that the initial carrier is not liable beyond its own line, in the absence of an express or implied agreement to the contrary. The case of Smith v. Telegraph Co., 84 Tex. 359, 19 S. W. 441, 31 Am. St. Rep. 59, and 2 Joyce on Elec. Law, § 786, are cited as supporting the rule. The instant case presents facts that make a distinguishment and render inapplicable the rule so referred to. Here, as seen by the evidence, when viewed from the question of peremptory instruction, the undertaking of appellant was for the delivery to appellee of a through call from Paris to Ardmore, and for such service, and to accomplish that end had made prior and special arrangements with another line to complete and carry out, for a proportion of the pay to it, the particular original undertaking. It was not merely an undertaking to deliver the call to a connecting carrier. It did not have to accept the call under an agreement for delivery to a point beyond its line. But having accepted and agreed to a through delivery, and itself specially arranged for and selected the particular instrumentalities for carrying out such particular contract, it constitutes no excuse in this case for appellant's not carrying out the contract with appellee that the negligence of its own selected agency, or in a sense partner in the undertaking, prevented prompt delivery.

The court in his charge predicated liability against appellant for the failure of the Chickasaw Telephone Company to notify appellee of the call at Ardmore upon the finding that appellant agreed, as an entire and original undertaking, to deliver a through call from Paris to Ardmore. By the second assignment it is contended there was error, upon the ground that appellant was not responsible for the negligence of the Chickasaw Telephone Company. If there was a through call, accepted as an entire and original undertaking on appellant's part, which the court authorized the jury to say and which was an issue, then, under the facts, there was a legal responsibility on appellant's part, and there was no error in the court's charge in this respect.

The fourth assignment complains of the admission of certain evidence. In complaining of the evidence, it is assumed that the call in suit was canceled at 5:20 p. m. by John Head. We do not think that it could properly be said that the evidence conclusively established that the call was canceled, and therefore there was no error in admitting the evidence.

The special charge which was refused, and which is complained of in the fifth assignment, is a peremptory instruction to the effect that the duty of the appellant to appellee in the handling of the call ceased after John Head left the office at Paris. The charge assumes that the evidence conclusively established a cancellation of the call, which, we think, could not be said. Besides the court instructed the jury that if John Head placed himself where he could not have talked, had the appellant been found, no negligence could be based on the failure to notify appellee after such time. And such charge by the court was more favorable to appellant than the proof warranted. The assignment is overruled.

[5] There was no error, under the facts, in refusing to hold appellant to the exercise of ordinary care in its effort to notify appellee of the call only from and after payment of the messenger fee in evidence, and therefore the seventh assignment is overruled. The undertaking on appellant's part was an express agreement to deliver the call to appellee at Ardmore, and not merely to deliver the call to a connecting carrier, and it was not until after it entered into the undertaking and began to carry out the same that it made any demand for a messenger fee. It was, no doubt, authorized to demand the fee, and could have done so at first. But it saw fit to not charge or demand same until after it had undertaken the contract, and this waiver or failure to demand would not relieve it of diligence to notify from the time it undertook to execute the contract. The question of negligence would be measured from the time it undertook to carry out the contract. Appellant by its arrangement with the Chickasaw Telephone Company knew of the charge for a messenger fee, and contracted with John Head with knowledge of this charge. And its delay in demanding the messenger fee, in the facts of the case, would not excuse its negligence.

[6-8] The special charge refused and complained of in the eighth assignment was to the effect that the negligence of John Head, appellee's agent, in failing to advise the appellee of the death of his sister by telegraph would constitute contributory negligence. The court in the main charge submitted this identical question, and the charge is not complained of. The special charge is not accurate, in that it failed to require the jury to find that the telegram would have been received by appellee before the time of burial. This was a material finding. Besides the evidence shows that appellant's opera-

tor informed John Head that the operator at Ardmore reported that appellee could not be found; that he was away, taking Christmas. As excusing further action, Head could rely on the information thus given. But, as stated, the issue was submitted by the court to the jury, and the special charge was properly refused.

[9] The special charge complained of in the ninth assignment was properly refused. Neither John nor Tom Head was the agent of appellee in postponing or causing to be postponed the funeral, and any failure to do so could not be attributable, through agency, to appellee. Besides, as just stated, Head could rely upon the information given by the appellant's agents that appellee was not at Ardmore; and if he relied upon and acted on such information, as he did, appellant is not in a position, as a wrongdoer, to say that his conduct was negligent in not postponing the funeral to another date, in order to notify appellee.

The judgment was ordered affirmed.

### On Motion for Rehearing.

Appellant insists that the case as made on the facts was one in which the appellant merely undertook to deliver a call beyond its line to a connecting carrier line which it did not own, manage, or operate, and that therefore it was not responsible for any negligence not occurring on its own line. In this connection the evidence showed that the appellant's line runs from Paris to Gainesville; thence to a cedar post on Red river, where it stops. On the same cedar post on Red river, the line of the Chickasaw Telephone Company, a corporation, begins, and runs thence to Ardmore. The two lines are fixedly connected together with copper wires on the cedar post at Red river, and thus made a continuous line from Gainesville to Ardmore. There is no office or agent at this point of connection. The two companies entered into an agreement to each receive and deliver all calls originating in Paris for Ardmore, and in Ardmore for Paris, over the connected lines for one price, which they divide between themselves in proportion fixed by their agreement of about one-third and two-thirds.

According to the evidence, the operation of the two lines on a call between the points named is thus: The appellant's operator at Gainesville, there in the office at Gainesville, adjusts the circuit connection, and when he adjusts the circuit connection then at once direct communication is had from Paris to Ardmore, or from Ardmore to Paris, as the call may be, over a continuous line. There is no other operator at Gainesville but appellant's operator, and the inference is it is his duty to operate the circuit connection, and it is wholly operated by him. No other but a through circuit connection

is made, it appears. According to the testimony of appellant's manager, which is undenied, "We transmit calls to Ardmore like we do to Paris, or any other place." So the evidence conduces to prove the facts (1) that the two lines are separately owned by the two distinct companies; (2) that the two companies have associated themselves together by a special agreement to each receive and deliver all calls for points on the lines of each, and through the two lines united in one continuous line, for one price, which they divide between themselves in proportions fixed in their agreement; and (3) that the case in suit was a through call for appellee's benefit from Paris to Ardmore, and that appellant accepted such through call and expressly agreed to deliver same at Ardmore to appellee, and to put Head and appellee in telephonic communication between the two points.

Having expressly undertaken to deliver the through call at Ardmore to appellee, then appellant, under the facts, would be liable for any injury resulting to appellee from negligent failure to carry out the contract, whether caused by itself or its associated partner in the undertaking. And so under the evidence and on the point made we adhere to our original opinion that there was no error on the part of the trial court in refusing to give a peremptory instruction, or in the charge submitting the issue. The additional findings are made as being in compliance with the request so to do, as far as the evidence warrants.

The motion is overruled.