### WESTERN UNION TELEGRAPH COMPANY v. J. W. TEAGUE.

#### No. 457.

1. **Practice—Argument of Counsel—Reading Cases to Jury.**—It is improper for counsel to read the decisions of other cases to the jury for the purpose of instituting a comparison between the facts in those cases and the one at bar, with arguments drawn from the amount of the verdict for damages in such cases.

2. **Delivery of Telegram—Negligence—Fact Case.**—See the opinion for facts under which it is held, that the question of a janitor's authority to receive a telegram for a party addressed at the building, and of want of diligence in not delivering the message to such janitor, were not legitimate issues in the case.

3. **Same—Delivery Outside Free Limit.**—Where the regulations of a telegraph company provide that certain charges will be made for the delivery of telegrams outside the free delivery limits of a city, the fact that an addressee's place of address is in such outside limits does not relieve the company of the duty of promptly delivering the message, especially where it undertook to and did deliver the message, and collected the charge for delivery.

APPEAL from Franklin. Tried below before Hon. J. L. SHEPPARD.

*W. W. Wilkins*, for appellant.—1. Unless appellant had notice that appellee was a student at the college, it was immaterial whether it was the duty of the janitor to receive the message, or whether he was accustomed to receive messages addressed to the students of the college, or whether it was the custom of appellant to deliver messages addressed to the students to the janitor, for appellant was not, without such notice, bound to deliver the message in question to the janitor.

2. The court erred in refusing the fourth special charge, to the effect, that the testimony showed that it was a rule of the company that messages should not be delivered by its agents to janitors or porters, and that the delivery sheets should be signed by the person to whom the message was addressed, and that any delivery made by defendant's messenger boys to the janitor, of messages addressed to any students of said college, or any custom of the messenger boys to so deliver, would not be binding on defendant, unless it should appear from the evidence that defendant knew of such acts or custom of said messenger boys, and, knowing it, ratified the same. Grinnell v. Tel. Co., 18 Am. St. Rep., 485.

3. The verdict was contrary to the special charge asked by defendant and the testimony upon which said charge was based, for the testimony showed that said college was beyond the free delivery limits of defendant's office; that there were special charges due for delivering said message beyond such limits, which were not paid or offered to be paid by the sender, and that the contract under which the message was

to be transmitted and delivered required payment of the cost of making a delivery thereof outside of such limits.    Tel. Co. v. Rains, 63 Texas, 29; Tel. Co. v. Henderson, 18 Am. St. Rep., 148.

*Hiram Glass,* for appellee.

LIGHTFOOT, CHIEF JUSTICE.—The following statement of the case is substantially correct:    This was an action brought by the appellee, in the District Court of Franklin County, for damages in the sum of $1500, on account of mental pain and anguish alleged to have been produced by negligent delay in the delivery of a message, filed with appellant at Mount Vernon, Texas, January 8, 1891, by J. S. Teague, addressed to appellee at Memphis Hospital College, at Memphis, Tenn., reading:    "Pa is very sick with pneumonia; come at once; answer;" whereby appellee was deprived of the privilege of being at the bedside of his father prior to his death, which occurred on January 10, 1891.    The appellant demurred generally and specially to appellee's petition, which were overruled, and pleaded the general denial and several special pleas, which will be noticed further on. On the issues presented by the petition and appellant's several pleas, the cause came to trial May 5, 1892, before a jury, and resulted in a verdict and judgment for appellee for $500, from which judgment this appeal is taken.

1.    The first question which we deem it important to consider arises under the appellant's third assignment of error.    There was evidence tending to show the time at which the message reached Memphis, Tenn., and was sent out from the office at that place; and the messenger boy testified, that he went with it to the Memphis Hospital Medical College, and when he reached there the building was closed; that there were no lights there, and when he knocked he could not gain admittance.    Appellee's witness, William Joiner, testified, that he was janitor of the college, and lived adjoining the college building; that it was a part of his duty to receive telegrams sent to the students of the college; that not long prior to January 8, 1891, he had received from one of defendant's messenger boys at the college, after 9 o'clock at night, a message for Dr. Stone, a student at the college, which he carried and delivered to Dr. Stone at his boardinghouse, and that he left immediately to see his sick father.    This testimony about delivering a message to Dr. Stone was wholly immaterial and irrelevant, and should have been excluded from the jury upon appellant's objection, which was duly presented, and has been assigned as error.

2.    The fourth assignment of error is as follows:    "The court erred in allowing plaintiff's counsel to read the decisions in the cases of C. B. Stewart v. Western Union Telegraph Company, and Western Union Telegraph Company v. John T. Moore, in the hearing and presence of the jury, and to discuss the same to the jury, as shown by defendant's bill of exceptions number 3."

The bill of exceptions shows that the court allowed these two cases to be read to the jury and comparison made between the facts of those cases and this, with arguments drawn from the amounts of the verdicts in those cases, which had been approved by the Supreme Court; that there was no question of law settled in those cases which was controverted in this; but that they were read purely for the purpose of making such comparisons before the jury. This was clearly erroneous, and should not have been permitted. A jury is impanelled for the purpose of deciding questions of fact, and the court should see that the particular case on trial, and that alone, should be submitted to them. Judge Gaines, in commenting upon the practice of reading cases to the jury, says: "It was the duty of counsel in his address to the jury to confine himself to the testimony bearing upon the issues of fact presented for their determination. The action of the Supreme Court in affirming a judgment in some case of a like character was a matter as wholly foreign to that discussion as any other fact, not in evidence, which may have been dragged into the debate." Railway v. Wesch, 85 Texas, 600; Dillingham v. Woods, opinion by this court June 27, 1894, unreported, and authorities there cited.

3. The eighth and ninth assignments are as follows: "The court erred in refusing the second charge asked by defendant, to the effect, that under the contract under which the message in question was to be transmitted and delivered, the defendant was not bound to deliver it to William Joiner, the janitor of said college, and that they should not consider any testimony pertaining to the delivery of messages to said Joiner by defendant's messenger boys, or any evidence pertaining to any custom of said messenger boys of delivering telegraphic messages to said Joiner.

"The court erred in refusing the fourth special charge asked by defendant, to the effect, that the testimony showed that it was a rule of the company that messages should not be delivered by its agents and servants to janitors or porters, and that the delivery sheets should be signed by the person to whom the message was addressed, and that any delivery made by defendant's messenger boys to William Joiner, the janitor of said college, of messages addressed to any students of said college, or any custom of said messenger boys to so deliver such messages, would not be binding on the defendant, unless it should appear from the evidence that the defendant knew of such acts or custom of said messenger boys, and, knowing it, ratified the same."

The appellant read in evidence the following rules in use by it at the date of the message in question: "A message must not be left with the janitor or porter of a building for delivery by him, nor be slipped under the door, nor left in a letter box, unless the addressee has filed with the manager a written request for such delivery; nor will a messenger allow any unauthorized person to know to whom a message is addressed."

Also the following rule, printed under the head of instructions to messengers, on the inside of the cover in which delivery sheets are placed: "The delivery sheet must in all cases be signed by the person to whom the message is addressed, and the correct time of delivery must be carefully noted."

Also the following other rule, printed under the same head, on the inside of said cover: "Delivery to a janitor or porter is forbidden."

The message in question was sent on one of the company's blanks, and was as follows: "Dr. J. W. Teague, Memphis Hospital College, Memphis, Tenn.: Pa is very sick with pneumonia. Come at once. Answer. J. S. Teague."

William Joiner testified, in behalf of appellee, that he was the janitor of said college; that he often received telegrams for the students, and delivered the telegrams right away; that the appellant had delivered telegrams to him after night, for the students, and did so prior to January 8, 1891; that he had received a good many telegrams from the defendant for students, and had done so prior to January 8, 1891. Also, that he could not receipt for telegrams himself, but had a boy that could write, and he would receipt for them; or sometimes the messenger boys would write the names for him in the delivery book. He also testified to receiving a telegram for Dr. Stone, above mentioned. It was in evidence, that neither the officers nor managers of the telegraph company knew of or permitted any custom of the messenger boys to deliver messages to the janitor of the college.

There was no testimony showing that Joiner was in the college building when the messenger boy arrived there, or was in a position to receive the message, even if the messenger boy could have so delivered it. There seems to have been too much prominence given on the trial to this man Joiner, and his authority, or want of authority, to receive messages sent to the college. Under the contract between the parties, it was the duty of the company to use reasonable diligence to transmit the message and deliver it to Dr. J. W. Teague, at Memphis Hospital College, and it is a simple question of fact whether or not, by the use of such reasonable diligence, they could have transmitted and delivered such message to him in time for him to have reached the bedside of his father before the latter's death. The question of Joiner's authority, or want of authority, to receive the message, or of any diligence, or want of diligence, in delivering the message to him, were not legitimate issues under the evidence in the case, and they should have been excluded from the jury, as was sought to be done by appellant in the requested charges, as above set out.

The eleventh assignment objects to the verdict of the jury, on the ground that it is contrary to the charge, to the effect that the college in Memphis was beyond the free delivery limits as fixed by the company, and hence appellant was not bound to deliver the message. It appears that the company fixed its own charges and obligated itself to deliver the message as sent; that by its rules, "messages will be de-

livered *free* within the established limits of the terminal office; for delivery at a greater distance, a special charge will be made to cover the costs of such delivery;" and there is testimony tending to show whether or not the college at Memphis was beyond the free delivery limits.

Whether the college was in the free delivery limits or not, it was the duty of appellant to use reasonable diligence to deliver the message. The regulation, as we interpret the contract, does not affect the question of promptness of delivery, nor does it excuse a failure to deliver; but the only question to be raised under it seems to be, whether the message shall be delivered without extra charge. The company undertook to deliver the message and collect the extra rate of fifteen cents for delivery beyond the free delivery limits afterwards, and it seems to have been, in fact, paid by appellee. Under such circumstances we do not think that the cases of Telegraph Company v. Rains, 63 Texas, 29, and Telegraph Company v. Henderson, 18 American State Reporter, 148, cited by appellant, have any application to this case. Having undertaken to deliver the message, and having actually collected the extra fare for delivery beyond the free delivery limits, it was the duty of appellant's servants to use reasonable diligence to deliver the message properly, and the issues should be clearly and tersely submitted, whether, by the use of ordinary care and diligence, the message could have been delivered to appellee, as directed, in time for him to have reached Mount Vernon before his father's death.

The other points presented will probably not arise on another trial. For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered September 19, 1894.