WESTERN UNION TELEGRAPH COMPANY v. J. B. DOWNS.

Decided February 19, 1908.

**1.—Telegram—Delay in Delivering—Negligence.**

An important telegram received at 8:35 a. m. was not delivered at the residence of the addressee until after 9:20 o'clock a. m., although the residence of the addressee was known to be only five blocks from the telegraph office. Held, negligence.

**2.—Same.**

A telegraph operator was informed about 9 o'clock in the morning that the addressee of an important message had left town to go to another station on the line ten miles distant; he thereupon telephoned the operator at said station to keep a lookout for the addressee and notify her that he had an important message for her; the telegram was addressed to Mrs. J. B. Downs; about 2 p. m. he was called up over the telephone from said station by a Mrs. Ben Downs to whom he read the telegram; it developed that this was not the party for whom the telegram was intended. Held, that the operator was negligent in presuming that he had delivered the message to the right party.

**3.—Same.**

Where the addressee of a telegram left town about nine o'clock in the morning to visit a town ten miles distant and returned to her residence about one o'clock, a failure to deliver the message until 4:15 p. m. was negligence.

**4.—Same—Contributory Negligence.**

The refusal of a lady to ride twenty five miles over bad roads, through the country at night without a suitable attendant and thus avoid the consequences of delay in delivering a telegram is no defense by a telegraph company to an action by her against the company for delay in delivering the telegram.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Clark & Bolinger, S. P. Ross* and *N. L. Lindsley,* for appellant.

*J. T. Halbrook* and *Taylor & Gallagher,* for appellee.

RICE, ASSOCIATE JUSTICE.—J. B. Downs, appellee, plaintiff in the court below, sued appellant, defendant in the court below, for damages alleged to have been sustained by him by reason of defendant's alleged failure to promptly transmit from Tyler, Texas, to McGregor, Texas, the following message, sent by Mrs. R. L. Peters to plaintiff's wife, to wit:

"Tyler, Texas, June 21, 1905.

"Mrs. J. B. Downs,
   McGregor, Texas.

"Come on first train. Your sister, Mrs. Wiggins, is dying. Phone Mrs. Duncan at Waco. (Signed) Mrs. R. L. Peters," and to deliver the same promptly to his said wife; he alleged that said message was delivered to defendant's office in Tyler on the 21st day of June, 1905, at about 4:30 o'clock a. m., and that defendant neg-

ligently failed to deliver the same to his wife until about 4:35 o'clock p. m. on the same day; that plaintiff's wife's sister died about 10:15 o'clock a. m. on said day, and that if said telegram had been promptly transmitted and delivered to his wife, that she could and would have taken the train leaving McGregor at 4:35 o'clock p. m. on said 21st day of June, and would have arrived in Tyler at about 2 o'clock a. m. on the 22d in ample time to have seen her sister after her death and before her burial, which was about 11 o'clock a. m. on said day, and in time to have attended the funeral of her said sister, which she could and would have done, and on account of said failure of defendant that she was prevented from seeing her said sister and attending the funeral.

Defendant answered by general denial, and specially pleaded that its agent at Tyler, when he received said message, explained to the sender thereof that in all probability it could not be delivered until after 8 o'clock a. m., since McGregor was a small place and did not maintain a night office, but that he would take the message and do the best he could to get it to McGregor as quickly as possible; that no night office for the public dispatch of business is maintained or was maintained by the company at said time at McGregor, but was only open for public business after the hour of 8 o'clock a. m., according to the rules and regulations of defendant, and that said message was promptly transmitted to and received at its office in McGregor at 8:25 on the morning of June 21, and was sent out for delivery from said office on said morning, when it was ascertained that Mrs. J. B. Downs, the addressee therein named, had started for Oglesby in a buggy and was not at home, and there was no one at her place of residence to receive the same; and thereupon the defendant's agent at McGregor notified the operator at Oglesby to keep a watchout for Mrs. Downs and to inform her that it had a very important message for her, and thereafter about 2 o'clock p. m. on the same day Mrs. J. B. Downs called up defendant's agent at McGregor over the phone and he then and there read the said message to her over the phone, and that she, after the reading of said message, had ample time to have taken the train which left McGregor at about 4:38 p. m. that afternoon. Defendant further pleaded that plaintiff's wife could, by the use of reasonable or proper diligence or care upon her part have reached Waco by leaving McGregor in a buggy after the Cotton Belt train left there, and thereby have reached Waco in time to catch the outgoing Cotton Belt train for Tyler the same night.

Plaintiff replied to defendant's answer by a supplemental petition, embracing general and special demurrers, and also by a trial amendment, which latter pleading contains a special answer to the effect that the defendant's wife could not have reached Waco by private conveyance in time to have caught the train on the Cotton Belt to Tyler on the night of June 21, because she did not have time to properly prepare for said trip. And further alleged that the roads were in bad condition, the distance from Waco to McGregor being 25 miles, and that if she could have caught the morning train of June 22, she would have reached Tyler after the burial of her sister; that

her husband was away from home at the time, and that she had no male relative or proper person to attend her on such a trip at night through the country, and that it was improper and also impossible, under the circumstances, for her to have undertaken such a trip.

The trial was had before a jury resulting in a verdict in favor of appellee against appellant for the sum of $300, from which this appeal is taken.

While exceptions were taken in the trial court to the introduction of certain evidence, as well as the refusal to give certain charges presented by appellant, still there is no assignment of error thereon, except as to the refusal of the court to give a peremptory instruction to find for appellant. There was a clear and admirable charge given to the jury by the trial judge presenting the law applicable to the case as made by the evidence; and the only two assignments presented by this appeal are, first a refusal by the court below to grant a new trial on the ground that the evidence conclusively showed the highest degree of care and diligence on the part of the defendant in the transmission of said message; and that the failure to deliver said message was due to no negligence on the part of the defendant; and, second, it is contended by appellant that the court erred in refusing to give the jury its special charge No. 4, directing the jury to return a verdict for the defendant for the reason that the undisputed evidence showed that the defendant company exercised the degree of care required by law in the transmission and delivery of said telegram.

These assignments raise practically the same question, and may be considered together. We think the evidence in this case is sufficient to raise the issue of negligence on the part of appellant and its employes, and to sustain the finding of such negligence; and therefore that the court did not err in refusing to give said special charge nor in declining to grant a new trial on the ground of the insufficiency of the evidence to support the verdict.

Briefly stated, it is shown that Mrs. Wiggins (who lived at Tyler), sister of plaintiff's wife, was taken seriously ill the evening of the 20th of June, 1905, and grew rapidly worse during the night; that on the morning of the 21st, between 4 and 5 o'clock, Mrs. R. L. Peters, mother of plaintiff's wife and also of Mrs. Wiggins, called up the telegraph operator at Tyler, informing him that her daughter was dying, and she wished the above message, which she then gave to said operator, wired immediately to Mrs. J. B. Downs at McGregor, in order that she might come on the first train, which the operator undertook to do, sending the same to Dallas, where it was transmitted to McGregor, being received there at 8:35 a. m. of said day. It is shown that at the time of the receipt of said message at McGregor, the messenger boy was not in, and that the message was not sent out from the office until 9 o'clock, when the messenger boy was dispatched to deliver same with several other messages for other parties in town. It appears from the evidence that these other messages were delivered prior to the one in question, and while the

messenger boy states that he went immediately to where Mrs. Downs lived to deliver same, still it is shown from his evidence that he delivered the other messages before going to plaintiff's residence and that they were delivered at 9:15. Upon the return of the messenger boy to the office he reported to the operator that Mrs. Downs was not at home and that he was informed by Mr. Yates that she had gone to Oglesby, a station on the Cotton Belt, ten miles west of McGregor; whereupon the operator phoned to Oglesby, informing the operator there that he had an important message for Mrs. Downs, and to keep a lookout for her and get her to the phone, guaranteeing charges therefor.

It clearly appears from the evidence that Mrs. Downs was at home on the morning of the 21st, and did not leave for Oglesby until 9:20; that she did not go to Oglesby at all on that day, having started, but after getting out two or three miles from McGregor, she returned on account of rain, stopping with a friend in the edge of town until about 12:30, after which she went to her own home, reaching there between 12:30 and 1 o'clock, and remained there the balance of the day.

There was a phone in the telegraph office and also one at the home of Mrs. Downs; and while it is true that it is shown from the evidence that the operator was called up, as he claims, by Mrs. Downs from Oglesby about 2 o'clock p. m. on said day, the message having been read by him to her, still it clearly appears from all the testimony in the record that instead of talking to the plaintiff's wife, he talked to a Mrs. Ben Downs, who testified that as soon as the operator stated that he had a message for her from Tyler that she told him that she was Mrs. Ben Downs, and hung up the phone. About 4:15 on that evening a Mr. King, who worked at the railroad depot where the telegraph office was located, but who had no connection with appellant, informed plaintiff's wife over the phone that there was a message 'for her at the depot from Tyler, upon which charges were due, but did not disclose to her the contents of the same; whereupon plaintiff's wife immediately hitched up her horse, drove down and got the message in question, and at the time of its receipt the train was leaving McGregor for Waco· on the Cotton Belt. The first information she had as to the contents of said message was when she read it at the depot.

While the messenger boy testified that he had a conversation that morning with Mr. Yates, the owner of the house where Mrs. Downs was living, and that said Yates informed him that Mrs. Downs had gone to Oglesby, without stating whom she intended to visit, still in this he was contradicted by Mr. Yates, who testified that he was not in McGregor on said day. Plaintiff lived in the central portion of the town of McGregor, within five blocks of the telegraph office. While said telegram was sent from Dallas in ample time to have reached McGregor at 8 o'clock a. m. the same was not received there until 8:35. This delay is not explained, nor is there any satisfactory explanation given why an effort was not made to deliver the telegram to plaintiff's wife earlier than 9 o'clock. She lived within five blocks of the office and was well known in the town of

McGregor, where she had lived for five or six years prior to that time.

It seems to us that by reasonable diligence on the part of appellant, either by sending a messenger boy direct to her home before said time, or by calling her over the phone, this message could have been delivered to her. But, even if it be conceded that the effort made in the morning to reach her showed reasonable diligence, still, it appearing from the evidence that she was at home from about 1 o'clock of that day until 4:15 in the afternoon, and, during which time there was no effort made to reach her by phone or otherwise, shows there was negligence on the part of appellant. It is true that appellant's agent may have concluded that the party with whom he talked at Oglesby at 2:30 was the plaintiff's wife; but it seems to us that he was not justified in this conclusion, because it was the duty of the operator to definitely ascertain to whom he was talking before relaxing his diligence to deliver said message, and we do not think under the circumstances disclosed by the record that it is a sufficient excuse that he talked with the wrong party under the mistaken belief that he was talking to plaintiff's wife.

It was shown that if Mrs. Downs had received the message at any time during said day before 4 o'clock p. m., she could and would have taken the train leaving McGregor for Waco at 4:35, and have reached Tyler in ample time to have seen her sister before she was buried, and to have been present at the time of her burial. We do not think, under the circumstances, that it was incumbent upon her to make an effort to reach Waco by private conveyance at night, as contended by appellant.

Believing that there was sufficient evidence to raise the issue of negligence, and the jury having determined the same against appellant, we do not feel warranted in disturbing their verdict. Where there is any evidence raising an issue, it is the duty of the court to submit the same to the jury. (Western Union Tel. Co. v. Hendricks, 68 S. W., 720; id. v. Dejarles, 8 Texas Civ. App., 111.) In Thompson v. Western Union .Tel. Co., 10 Texas Civ. App., 121, the court say: "Whether under all the circumstances the proper diligence had been employed to make delivery was an issue of fact for the jury."

Believing that no such error has been committed by the trial court as would demand the reversal of this case, and that the evidence is sufficient to sustain the verdict, the judgment is affirmed.

*Affirmed.*

Writ of error refused.