WESTERN UNION TELEGRAPH CO. v.
TAYLOR.  (No. 5345.)

(Court of Civil Appeals of Texas. Austin.
April 15, 1914. Rehearing Denied May 13, 1914.)

1. TELEGRAPHS AND TELEPHONES (§ 56*)—DELAY IN DELIVERING—LIABILITY TO PERSON NOT NAMED.

A telegraph company may be liable to one not appearing on the face of the message for her mental suffering resulting from delay in its delivery, where the company's agent was apprised, when the message was received, of the relationship of the parties.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 37; Dec. Dig. § 56.*]

2. FRAUDS, STATUTE OF (§ 139*)—PERSONS TO WHOM STATUTE IS AVAILABLE.

The statute of frauds is no defense to an action for delay in delivering a telegram, because F., by whom the sender of a telegram caused it to be sent, and who contracted with the company's agent to send it, orally guaranteed the charges, which were afterwards paid.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 334–341; Dec. Dig. § 139.*]

3. PLEADING (§ 432*)—VARIANCE—AIDER BY VERDICT.

The objection of variance cannot be raised after verdict.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1442–1450, 1485; Dec. Dig. § 432.*]

4. TELEGRAPHS AND TELEPHONES (§ 54*)—DELAY IN DELIVERY—LIABILITY FOR NEGLIGENCE—PROVISION ON MESSAGE.

When a telegraph company for an extra charge undertakes to deliver a message beyond its free delivery limit, it is bound to exercise reasonable diligence and ordinary care to do so, and cannot avoid liability for negligent failure in that respect by the printed provision on the back of the message that such undertaking is as agent of the sender without liability.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 39–47; Dec. Dig. § 54.*]

5. TELEGRAPHS AND TELEPHONES (§ 66*)—DELAY IN DELIVERY—NEGLIGENCE.

A finding of negligence in not seasonably delivering a telegram in the country, beyond the free delivery limit, as had been contracted for, is authorized, where the agent merely tried to get some men near at hand and one of the two liverymen in town to do it, and the other testified that he could then have delivered it, had he been requested.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

6. TELEGRAPHS AND TELEPHONES (§ 38*)—DELAY IN DELIVERY—RECEIPT AFTER OFFICE HOURS.

That a telegram, sent from C. to H., did not reach H. till after office hours furnishes no excuse for failure to seasonably deliver it; the company's agent having in fact received it when it arrived, and undertaken to deliver it.*

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

7. TELEGRAPHS AND TELEPHONES (§ 38*)—DELAY IN DELIVERY—RECEIPT AFTER OFFICE HOURS.

The transmitting agent of a telegraph company is bound to know of the rules of the office to which a message is to be sent, and, not informing the sender that the message will not reach there till after office hours, such fact furnishes no excuse for delay in its delivery.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

8. TELEGRAPHS AND TELEPHONES (§ 38*)—DELAY IN DELIVERY—PREPAYMENT OF CHARGES.

A telegraph company having undertaken to transmit a message and deliver it beyond its free delivery limits, it is immaterial, as regards liability for delay in delivery, that the charges were not prepaid, but only guaranteed.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

9. TRIAL (§ 194*)—INSTRUCTIONS ON WEIGHT OF EVIDENCE.

The requested instruction, in an action for delay in delivering a telegram, announcing death and place and time of funeral of the sister of plaintiff's wife, that the wife was presumed to know the schedule of trains which she could take and thereby seasonably reach such place is properly refused as on the weight of evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

10. TELEGRAPHS AND TELEPHONES (§ 51*)—DELAY IN DELIVERY OF MESSAGE—CONTRIBUTORY NEGLIGENCE.

There was no contributory negligence, preventing recovery for delay in delivery of a telegram, announcing a death and place and time of funeral, arriving too late to allow of the taking of the direct train to such place, because the sister of deceased did not take a train by a roundabout railroad route, of which she knew nothing, or because she did not undertake, by private conveyance, a 40-mile trip, over muddy roads, at night; it not appearing that, had she done so, she would have arrived in time for the funeral.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 35; Dec. Dig. § 51.*]

Appeal from District Court, Hamilton County; J. H. Arnold, Judge.

Action by W. M. Taylor against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Arch Grinnan, of Brownwood, for appellant. Langford & Chesley, of Hamilton, for appellee.

RICE, J. Mrs. Louisa Taylor was a sister of Mrs. Mary Brawn, who died at her home near Clifton, Tex., on Saturday, December 7, 1912, and Gus Isensee was a brother of both of them. On the 8th of December, Henry Isensee, another brother, caused a telegram to be sent from Clifton by Louis Fricke on said day at 4:40 o'clock p. m. to Gus Isensee, who lived about six miles west of Hamilton, informing him of the death of Mrs. Brawn, his sister, stating that she would be buried the following Tuesday, and requesting him to come at once and to notify Gus Taylor thereof, who lived about 18 miles from him in the same county. This telegram, though received at Hamilton within an hour after its receipt by said company was

nevertheless not delivered to the addressee until about 12 o'clock of the next day, which it was alleged and shown was too late for him to notify his sister in time for her to have reached Clifton before the burial, which took place on the afternoon of the 10th of December. All charges necessary for the prompt delivery of said message were guaranteed by the sender, and the relationship of the parties fully explained to the company's agent, who accepted the message, agreeing to promptly transmit and deliver same.

It was shown that William Taylor, the plaintiff, was the husband of Mrs. Louisa Taylor, and was also known as Gus Taylor, and that, if the telegram had been delivered to Gus Isensee at any time before 9 o'clock a. m. on the 9th, he by phone would have notified his sister thereof, who could and would have taken the south-bound train from Ireland, a station on the Stephenville, North & South Texas Railroad at 1:34 o'clock that evening, and would have reached Clifton on the evening of the same day in time to have been present at the burial of her sister, and this suit is brought by William Taylor, the husband, to recover damages arising therefrom.

The defense urged was: First. Contributory negligence on the part of plaintiff and Gus Isensee. Second. That the message was not delivered because received after office hours. Third. That the contract, under which the message in question was received for transmission, was partly in writing and partly in printing, and was duly executed and signed by the sender thereof, and contained a stipulation to the effect that "messages shall be delivered free within one-half mile of the company's office in towns of 5,000 population or less, and within one mile of such office in other cities or towns. Beyond these limits the company does not undertake to make the delivery, but will, without liability at the sender's request as his agent, and at his expense, endeavor to contract for him for such delivery at a reasonable price. No employé of the company is authorized to vary the foregoing." That Hamilton contained less than 5,000 people, and that neither plaintiff, his wife or the sendee, lived within the free delivery limits thereof. That Gus Isensee lived about six miles from said town, and that appellant did endeavor to contract for the delivery of said message to him and did in fact contract with one David McCullough for its delivery to him at his home six miles from Hamilton, and said message was in fact delivered to the sendee by said McCullough. Fourth. That plaintiff's wife could have reached Clifton on the morning of the 10th by taking the north-bound train at Ireland by way of Alexander and Morgan, and was negligent in failing so to do. And further that, after Gus Isensee learned the contents of the message in question, he could have notified plaintiff's wife in time for her to have left by private conveyance and reached Clifton, some 40 miles distant, in time for the funeral and burial, but that on account of his negligence, and that of herself, she failed to do so.

There was a jury trial, resulting in a verdict and judgment in behalf of plaintiff, from which this appeal is prosecuted.

Notwithstanding appellant's office hours were from 12 to 3:30 o'clock p. m. on Sunday, yet the agent was in fact at the office when the message came, and received it, whereupon he made inquiry of some men near by if they could deliver it for him. Receiving a negative reply, he phoned to a livery stable, but got no answer. This was all he did until the next morning, when the messenger boy about 9 o'clock was sent out in the country to deliver the message to Gus Isensee. A service message was sent and received a few minutes after the message in question, informing the agent that the charges were guaranteed, and there was another livery stable in the town which was not applied to by him. The liveryman testified that he could have delivered the telegram that afternoon, within an hour, if requested to do so.

[1] It is urged by the first assignment that the court should have given a peremptory charge in favor of appellant on the following grounds: (1) That the company is not responsible to a person not appearing on the face of the telegram, nor otherwise known to it as a beneficiary; (2) that, as the contract between Fricke and the agent was in parol, it contravened the statute of frauds, and was not enforceable; (3) that there was a variance between the allegation and the proof. We think there is no merit in either of these propositions, because it appears from the evidence, so far as the first is concerned, that the company's agent was apprised of the relationship of the parties at the time the message was received. This had been held to be sufficient. See Telegraph Co. v. Gotcher, 93 Tex. 114, 53 S. W. 686; W. U. Telegraph Co. v. Carter, 85 Tex. 585, 22 S. W. 961, 34 Am. St. Rep. 826.

[2] As to the second, it may be remarked that the defense of the statute of frauds is personal to the party sought to be charged, and, if he does not invoke it, the other party cannot. The undisputed evidence is that Fricke contracted with defendant's agent at Clifton to send the message, guaranteeing the charges, which were afterwards paid. See Railway Co. v. Settegast, 79 Tex. 256, 15 S. W. 228, and Robb v. Railway Co., 82 Tex. 392, 18 S. W. 707.

[3] As to the question of variance, it is sufficient to say that no objection was made to the introduction of testimony on account thereof, and the point cannot be raised after verdict. Besides, it appears that Isensee testified that he understood who was meant by

Gus Taylor, and, if the message had been received in time, he would have notified his sister.

[4, 5] The sixth assignment is based upon the third subdivision of the defense, to wit, that the company limited its liability by a provision printed on the back of the message to the effect that the same should be delivered free within one-half mile of the company's office in towns of 5,000 population or less, but beyond these limits it did not undertake to make delivery, but that without liability, at the sender's request, as his agent and at his expense, would endeavor to contract for him such delivery at a reasonable price. If appellant is right in this contention, then the judgment should be reversed. It does not appear that Fricke's attention was called to this provision at the time he sent the message, and the agent of the company was apprised by the message itself of the fact that Isensee lived six miles in the country, and with this knowledge contracted with the sender for an extra charge to deliver the same. It is well settled that a telegraph company cannot relieve itself from its own negligence (Jones on Tel. & Tel. Co. § 259 et seq.; W. U. Telegraph Co. v. Louisell, 161 Ala. 231, 50 South. 87; W. U. Telegraph Co. v. Hill, 163 Ala. 18, 50 South. 248, 23 L. R. A. [N. S.] 648, 19 Ann. Cas. 1058; Strong v. W. U. Telegraph Co., 18 Idaho, 389, 109 Pac. 910, 30 L. R. A. [N. S.] 409, Ann. Cas. 1912A, 55) ; and the rule seems to be that such company may properly establish free delivery limits and refuse to deliver a message at an indefinite distance in the country, or at any point beyond such free delivery limits, unless an additional charge covering the cost of such service is prepaid or satisfactorily guaranteed. See 37 Cyc. 1678B and cases collected in the note thereunder. See, also, W. U. Telegraph Co. v. Taylor, 3 Tex. Civ. App. 313, 22 S. W. 532; W. U. Telegraph Co. v. Teague, 8 Tex. Civ. App. 447, 27 S. W. 958; W. U. Telegraph Co. v. Warren, 36 S. W. 316. But when they undertake, for an extra charge, to deliver a message beyond their free delivery limits, they are bound to exercise reasonable diligence and ordinary care to do so. Western Union Telegraph Co. v. Matthews, 113 Ky. 188, 67 S. W. 849, 24 Ky. Law Rep. 3. It is said in Joyce on Electric Law, § 14, that:

"Both the telegraph and telephone have become not only necessary, but are almost indispensable as a vehicle of public intelligence, and for the conduct of affairs, business, and commerce. They are both instrumentalities of a public character, though they exist for private gain. Their operations in doing a general business is in the nature of a public employment, for they are public or quasi public servants. They undertake for a consideration to transmit messages, intelligence, or communications, not exclusively for particular persons, but for all, for their lines are open alike to every one who pays their charges, subject to such contract limitations as may legally exist."

In Jones on Telegraph & Tel. Cos. § 266, it is said:

"That they are under legal duty to accept, transmit, and deliver without error or delay all proper messages presented after they have been compensated for such service, and any injury resulting from a failure to perform such duty will subject them to damages."

With reference to limitation of their liability, it is said by the same author that:

"The general rule, supported by the weight of authority, is that telegraph companies cannot by any kind of a contract exempt themselves from losses caused by their own negligence or that of their servants. The rule rests upon consideration of public policy, and upon the fact that to allow companies to absolve themselves from the duty of exercising care and fidelity would be inconsistent with the very nature of their undertaking. It is the duty of every citizen, while following his daily avocation, to exercise due care and fidelity towards his fellowman, and for any negligent failure to do so, whereby the latter suffers loss, the former will be liable. These companies have assumed public franchises, and the care and fidelity which they owe to the public is even greater than those of private citizens. In other words, these parties do not stand on equal footing with telegraph companies, but the latter have acquired in consideration of public duties assumed, certain privileges and exemptions under the articles of incorporation which are not enjoyed by the public in general. Therefore, to permit them to exempt themselves from liability caused by their negligence would in effect authorize them to abandon the most essential duties of their employment." Id. § 367.

It is also true that limitations or restrictions in contracts of this character must be reasonable, in order to be upheld. We are inclined to believe that the limitation urged as a defense in the present instance is against public policy, and if sustained would relieve the company against its own negligence. It is held in Western Union Telegraph Co. v. Seals, 45 S. W. 964, that:

"A telegraph company cannot avoid liability for negligently failing to transmit a telegram by having a statement printed on the back of the paper on which the message is written that it is 'the agent of the sender without liability.' "

See Walker v. W. U. Telegraph Co., 75 S. C. 512, 56 S. E. 38; Jones on Tel. & Tel. Cos. § 404.

In the instant case a slight effort only was made to get some other person to deliver the message. It was shown that the message would have been delivered by the liveryman on the evening it was received for $1.50, if request had been made of him, while the agent delayed until next morning and then sent his own messenger boy, at an expense to the sender of $2.85. Believing that the provision in question, under the facts in evidence cannot be urged as a defense, this assignment is overruled.

[6, 7] We do not think that the failure of the telegram to reach Hamilton until after office hours furnishes any excuse for failure to deliver, since the company's agent in fact received the message when it arrived, and

undertook to deliver it. This has been held to constitute a waiver of such hours. See W. U. Telegraph Co. v. Hill, 163 Ala. 18, 50 South. 248. In Western U. Telegraph Co. v. Owens, 116 S. W. 89, in an action against a telephone company for failure to notify plaintiff of a sick call, it was held that the fact that the call was received after office hours constituted no defense; it appearing that it was received without objection, and that no claim was made that the notice would not be given because received after office hours. Besides, the transmitting agent was bound to know of the rules of the office to which it was sent, and he failed to notify the sender that it would not be received after office hours. See W. U. Telegraph Co. v. Harris, 91 Ark. 602, 121 S. W. 1051, 24 L. R. A. (N. S.) 1283.

[8] The court, among other things, charged the jury that it was the duty of the company to use ordinary care to correctly transmit and promptly deliver to the person addressed all messages accepted for transmission over its wires, whether the same is paid for at the time of transmission or not, and whether the party addressed resides within or without the free delivery limits of the town or city at the point of destination. This is made the basis of the seventh assignment of error. The undisputed evidence shows that the company accepted the message, knowing that it was to be delivered six miles west of the place to which it was sent, and also shows that the company, through its own messenger, attempted to deliver it. This being true, and the facts showing that an extra charge for such delivery having been demanded and guaranteed, the charge in question was not error.

[9] Appellant requested and the court refused to give a charge that plaintiff's wife was presumed to know the schedule of trains which she could take and thereby reach Clifton in time for her sister's funeral. This we think was properly refused, because the charge was upon the weight of evidence.

[10] Plaintiff's wife could not be expected to take a route that she knew nothing of; nor was she obliged to undertake a trip over muddy roads at night, through the country, when it does not appear that, even had she done so, she would have reached Clifton in time to have attended the funeral (see W. U. Telegraph Co. v. Downs, 49 Tex. Civ. App. 255, 119 S. W. 119), and therefore we hold that she was not guilty of contributory negligence in these respects, and overrule the fifteenth assignment of error.

The remaining assignments have all been duly considered, but are regarded without merit.

Finding no reversible error in the judgment of the trial court, the same is affirmed.

Affirmed.