## INTERNATIONAL–GREAT NORTHERN R. CO. v. SIFUENTES. (No. 654.)

Court of Civil Appeals of Texas. Waco. April 26, 1928.

Rehearing Denied May 17, 1928.

1. **Trial** ⊚⟶350(4)—**Court must submit issue of fraud in obtaining release to jury, if there is any evidence raising issue.**

If there was any evidence raising issue of fraud in obtaining release from injured employee, court was under duty to submit issue to jury, and to refuse to do so and to instruct for defendant would have been error.

2. **Release** ⊚⟶58(6)—**Evidence held to raise issue for jury whether injured employee was induced to execute release by misrepresentations (Rev. St. 1925, art. 2185).**

In action against railway by employee for injury to foot, evidence tending to show that doctor, claim agent, and interpreter, acting together, intentionally misled and deceived employee as to real condition of foot, inducing him to execute release, *held* sufficient to submit *to jury issue whether plaintiff was induced to make release by misrepresentations under Rev. St. 1925, art. 2185.*

---

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Master and servant ⟜286(41)—Whether railroad was negligent in not warning employee required by foreman to aid in moving heavy roller held for jury.**

Evidence that injured railway employee and two other employees were required by foreman to move iron roller, weighing 2,000 pounds, and requiring four to six men to handle, that injured employee was inexperienced in handling roller, and did not know, and was not warned, of danger by foreman, *held* sufficient to raise issue of fact for jury whether railroad was guilty of negligence which proximately caused injury.

**4. Commerce ⟜27(8)—Master and servant ⟜210(1)—Railroad employee, engaged in paving street crossing, and not in bettering tracks on crossing, held not engaged in interstate commerce, and did not assume risk.**

Where injured employee of railroad was engaged in repairing public street crossing for convenience of public, and not in any work for betterment of railroad tracks on crossing to enable interstate trains to pass over same, employee bringing roller to be used in construction of paving over crossing for benefit of public traffic was not engaged in interstate commerce, and hence did not assume risk of injury.

Appeal from District Court, Brazos County; W. C. Davis, Judge.

Suit by Abelardo Sifuentes against the International-Great Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Andrews, Streetman, Logue & Mobley and Morris, Sewell & Morris, all of Houston, and F. L. Henderson, of Bryan, for appellant.

J. G. Minkert, of Bryan, for appellee.

STANFORD, J.   This suit was by appellee, alleging, in substance, that about October 5, 1926, he was in the employ of appellant as a laborer in the capacity of a section hand, and that on said date he was ordered by the foreman of said gang, under whom he worked, to assist other employees in moving a heavy iron roller in the city of Bryan, and that such roller, while being moved by appellee and two other laborers, turned over, and appellee's foot was caught and crushed, to his damage in the sum of $1,000. Appellant for answer, in addition to a general demurrer, special exception, and general denial, pleaded a release executed by appellee in the usual form, releasing appellant from all damages arising by reason of said injury; and further specially pleaded that at the time said injuries were received, both appellant and appellee were engaged in interstate commerce, and that appellee's injury was the direct and proximate result of damages assumed by him, and that said injuries were the result of appellee's contributory negligence, and that such injuries were the result of an unavoidable accident. Appellee, in a supplemental petition, alleged the contract of settlement was not binding upon him, for the reason that he was deceived and misled by the statements of the attending physician at the hospital, who treated him, and other agents of appellant, to the effect that he was well, or would be in a little while, etc., and that he replied upon said false statements, and was thereby induced to sign the release, etc. Appellee further denied that he and appellant were engaged in interstate commerce at the time of the injury, and denied that said jury was the result of an unavoidable accident.

In response to special issues, the jury found:

"(1) The defendant * * * was guilty of negligence in instructing and ordering the plaintiff to move said roller under the conditions and circumstances surrounding its being moved.

"(2) That said negligence was the proximate cause of the injury received by plaintiff.

"(3) The plaintiff was misinformed and misled as to the condition of his foot by the surgeon in charge of the hospital and by the claim agent of defendant at Palestine, or either of them, at the time he signed and executed the release offered in evidence.

"(4) The plaintiff was induced to sign and execute said release by reason of statements made to him by the surgeon in charge of the hospital and by the claim agent of defendant at Palestine, or either of them.

"(5) That $500 will fairly and reasonably compensate the plaintiff for the injuries sustained.

"(6) Plaintiff's injury was not caused or occasioned by an unavoidable accident."

"Special issue No. 1 by defendant: Plaintiff was not guilty of contributory negligence on the occasion in question."

On these findings and such additional findings as the pleadings and evidence justified, the court entered judgment for appellee, and appellant presents the record here for review, upon one proposition, to wit, that it was the duty of the trial court to peremptorily instruct the jury to return a verdict in favor of appellant, assigning three reasons, however, why such instruction should have been given, to wit: (1) Because the evidence was wholly insufficient to avoid the release executed by appellee; (2) because the evidence fails to show appellant was guilty of any actionable negligence resulting in appellee's alleged injuries; (3) because the undisputed evidence showed that appellee and appellant, at the time of the injury, were engaged in interstate commerce, and that appellee assumed the risk, etc. We will dispose of these questions in the order stated.

[1] There is no contention that the facts pleaded, if found to be true, were not sufficient to require the release to be set aside. There is no objection to special issues 3 and 4 submitting this phase of the case to the

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

jury. There is no contention that the findings of the jury to said issues did not require said release to be set aside. If there was any evidence raising these issues, then it was the duty of the court to submit same to the jury, and to refuse to do so and to instruct a verdict for appellant would have been error. So the question here involved is, Was there any evidence tending to show that the appellee was misinformed and misled as to the condition of his foot by the hospital surgeon and by the claim agent at the time he executed the release, and was there any evidence tending to show that appellee was induced to execute the release by reason of statements made to him by said parties? The evidence discloses: That appellee, while in the employ of appellant, was, on October 5, 1926, injured by having his foot crushed. On October 6, 1926, by authority of appellant, he was admitted to its hospital. That an X-ray picture of his foot revealed that two bones therein were broken. That he remained in said hospital from October 6th until November 15th, when he was discharged by the doctor in charge thereof, and who had been treating him. This doctor testified:

"When he was well enough to be discharged, I told him his foot was well enough for him to go to work. That was on November 15th. I told him that at the hospital. I made out discharge papers and gave to him and sent him to the claim department. I sent him down there in a car."

Appellee testified:

"At the time I signed this release the doctor told me my foot was all right and that it needed a little time to get completely well; I believed the doctor and acted upon his recommendation. I signed the release because I thought I was well. They had an American gentleman there as an interpreter there at that time. The interpreter told me I would get well in a little while."

[2] The evidence shows that the appellee was admitted to the hospital only with the consent of the appellant company, and that the doctor who treated appellee was in charge of said hospital, which was known as the I–G–N Hospital at Palestine. The claim agent's office was only about one-half mile from the hospital. Appellee could not speak English. The doctor evidently knew this, and had so informed the claim agent. The doctor, on telling appellee that his foot was well, or would be in a day or so, gave him his discharge from the hospital, did not permit him to go where he pleased, but put him in a car, and sent him to the claim agent's office. The claim agent must have known the doctor was sending appellee to his office, for, when appellee arrived, he found an interpreter present in readiness, who had been selected by the claim agent alone, without consulting appellee, and who volunteered to state to appellee, in the presence of the claim agent,

that he would get well in a little while. There was no contention on the trial that appellee was well at said time, nor that he was in condition to get well very soon. A week or so later an operation on his foot was required, and he did not recover for six weeks or two months after the execution of the release. We think there was evidence tending to show that the doctor, the claim agent, and the interpreter, acting together, intentionally misled and deceived appellee as to the real condition of his foot, and thereby induced him to execute said release, and, as above stated, if there was any evidence raising such issues, then it was the duty of the court to submit same to the jury. Article 2185, Revised Statutes 1925; Gray v. Fussell, 48 Tex. Civ. App. 267, 106 S. W. 454; M. K. & T. Ry. Co. of Texas v. Williams (Tex. Civ. App.) 117 S. W. 1043; Western Union Tel. Co. v. Downs, 49 Tex. Civ. App. 255, 119 S. W. 119; Producers' Oil Co. v. Barnes (Tex. Civ. App.) 120 S. W. 1023; Texas Brokerage Co. v. Barkley & Co., 60 Tex. Civ. App. 466, 128 S. W. 431; Cartwright v. Canode, 106 Tex. 502, 171 S. W. 696; Davis v. Hill (Tex. Civ. App.) 272 S. W. 291. We overrule this contention of appellant.

[3] Did the court, in refusing to instruct for appellant on the ground there was no actionable negligence shown, commit error? The evidence shows that, at the time of the injury, appellant's section crew was engaged in paving the crossing of one of the public streets of the city of Bryan with appellant's railway track; that appellee was a member of said section gang, which was working under the direction of Shelton as foreman; that, after the paving material was spread upon said crossing, it was necessary to pack same, and to accomplish this a heavy iron roller was provided; that this iron roller was about 2½ feet long and probably 2 or 3 feet in diameter; it had a handle somewhat similar to the handle of a lawn mower, attached to the two ends of a rod extending through the center of the roller; it was moved from place to place, and used in packing any surface by being pushed or pulled by means of said handle. Just prior to the injury, said roller was about 30 feet away from where said crossing was being paved, and to bring same to said crossing it was necessary to get it over a curb some 5 or 6 inches high. The evidence is sufficient to show that this roller weighed about 2,000 pounds, and required from four to six men to handle it, and also that getting it over said curb was dangerous, unless it was kept straight with the curb, while being pulled over. The evidence is also sufficient to show that appellee was inexperienced in handling this roller, or any similar machinery, and did not know of the danger attending its removal, and appellant's foreman did not warn him of such danger.

Appellant's foreman ordered appellee and two other men to bring the roller to said crossing who, in attempting to get same over said curbing, attempted to get one end upon said curb first, because they were unable to pull it straight over, when said roller turned over, and caught and crushed appellee's foot. There is no contention that appellant's negligence was not properly pleaded, and properly submitted to the jury. The evidence was sufficient to raise an issue of fact for the jury as to whether or not appellant was guilty of negligence which proximately caused appellee's injury. See authorities cited above. The trial court was correct in refusing to instruct for appellant on this phase of the case.

Did the undisputed evidence show that appellant and appellee were engaged in interstate commerce at the time of the injury, and that appellee assumed the risk? The uncontradicted evidence shows that appellee and his co-workers performed no act or service on the day of the injury which could be construed to be in furtherance of interstate commerce. The foreman, Shelton, testified that they were repairing a street crossing, where a public street of the city crossed appellant's track; that they used ground asphalt and boiling fuel oil; that they spread the ground asphalt on the crossing, and poured the boiling oil over that, and then rolled it down with the roller to pack it; and said further:

"At the time we were doing that we were not doing anything to the ties or rails anywhere, just the crossing. We did not do anything to the track at that point. * * * We were repairing over the crossing between the rails and on the sides. Yes; the crossing was in such condition it became necessary to repair it. * * * This composition I was putting there was not put there for trains to run on. It was paving for automobiles, wagons and pedestrians. It was for the use of the public. The paving was for the public. Yes; the track was in good condition. I was not working on the track at that time."

In the case of Bruce Shanks v. Del. L. & W. R. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797, the court, we think, laid down the correct test as follows:

"The question for decision is, was Shanks at the time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his employment was on other occasions is immaterial, for, as before indicated, the Act refers to the service being rendered when the injury was suffered * * * and * * * the true test of employment in such commerce in the sense intended is, was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

[4] In this case, at the time appellee was injured, he was not engaged in any work for the betterment of appellant's track to enable interstate trains to better pass over same. The track at said crossing was in good condition. Nothing was being done to said track, but the public street crossing was being paved for the convenience of the public who desired to pass over said crossing. Clearly, appellee, who was bringing the roller to said crossing to be used in the construction of said paving over said crossing for the benefit of the public traffic, was not engaged in interstate commerce. Shanks v. Del. L. & W. R. R., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Illinois Central R. R. v. Behrens, 233 U. S. 475, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Del. L. & W. R. R. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397. However, if the evidence had shown that appellant and appellee were at the time of the injury, engaged in interstate commerce, and the common-law rule of assumed risk, therefore, applied, still, under the evidence in this case, it would have been error to instruct for appellant. The court was correct in refusing such instruction.

The judgment is affirmed.